**Affirmed in part and Reversed in part and Opinion Filed June 5, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

———————————

**No. 05-22-00498-CV**

———————————

**TEXAS DEPARTMENT OF TRANSPORTATION, Appellant**
**V.**
**BLANCA TOLEDO AND KHALOUD MIRZA, Appellees**

**On Appeal from the County Court at Law No. 2**
**Dallas County, Texas**
**Trial Court Cause No. CC-19-01769-B**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Goldstein, and Smith
Opinion by Justice Pedersen, III

Appellant Texas Department of Transportation (TxDOT) appeals the trial court's April 15, 2022 Order Denying Defendant Texas Department of Transportation's Plea to the Jurisdiction and No-Evidence Motion for Summary Judgment (the Order). In three issues, TxDOT argues that sovereign immunity bars (1) appellee Khaloud Mirza's claim for property damage, (2) appellees' tort claims that depend on evidence that TxDOT had knowledge of the alleged premises defect, and (3) appellees' tort claims where appellees failed to establish statutory notice of

their claims. We affirm the trial court's Order in part and reverse it in part, and we remand the case for further proceedings.

## Background

On August 14, 2018, at approximately nine o'clock at night, appellee Blanca Toledo was driving northbound on State Loop 12. She attempted to take the exit ramp to Northwest Highway, but that ramp had been re-purposed as a construction zone. The entrance to the construction zone was not blocked, and Toledo drove into the zone. The vehicle she was driving—which was owned by Mirza—struck an un-level pavement before coming to a stop on a hill of gravel inside the construction zone.

An officer of the Dallas County Sheriff's Office identified as B. Brown was dispatched to the scene of Toledo's accident. After investigating, Brown completed TxDOT's form titled Texas Peace Officer's Crash Report (the Crash Report).[1] Along with details concerning the driver, the car, and time and place, the Crash Report included Brown's narrative of how the accident occurred. His conclusion was:

> The entrance to the construction zone can be misleading to drivers traveling northbound, if it is not blocked. This entrance would be the previous exit ramp to Northwest Highway before construction began and is normally blocked off with barrels or cones when construction workers are not present, to avoid incidents such as this. Texas Department of Transportation [was] notified. A traffic control foreman with M.O.T., who is sub-contracted with TxDOT, came on scene and confirmed it needed to have been blocked but was not.

---

[1] The copy of the Crash Report in our record is certified by—and from the files of—the Director of TxDOT's Crash Data & Analysis Section.

Brown stated that Mirza's car sustained damage to the front and the undercarriage. The car was towed from the construction site, and Brown checked a box on the Crash Report indicating that it had incurred at least $1000 of damage. The report indicated that Toledo was not injured.

Toledo and Mirza sued TxDOT.[2] Toledo sought damages for personal injuries, and Mirza sought to recover for the damage to his vehicle.

TxDOT filed its Defendant Texas Department of Transportation's Plea to the Jurisdiction and No-Evidence Motion for Summary Judgment (the Plea), supported by evidence including the live pleadings, its own discovery responses, excerpts from its "Development Agreement SH 183 Managed Lanes Project" with General Contractor SouthGate Mobility Partners, LLC, and "Southgate Constructors' Night Shift Recap for August 14, 2018." The response to the Plea also relied on evidence including the certified Crash Report, correspondence between appellees' counsel and TxDOT, and TxDOT's discovery responses.

The Order reflects that the Plea was heard by the trial court, considered along with the response, and was denied. This interlocutory appeal followed.[3]

---

[2] Appellees also originally sued the City of Dallas, but the City was non-suited with prejudice three months later.

[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5), (8).

**Sovereign Immunity**

Sovereign immunity protects a governmental unit of the State from lawsuits for money damages unless its immunity has been waived. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006).[4] This immunity deprives a trial court of subject matter jurisdiction and may be asserted by a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). If parties depend on evidence in this plea stage, then the trial court's review generally mirrors the summary judgment standard. *Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 664 (Tex. 2019). When the evidence creates a fact question on the jurisdictional issue, the trial court cannot grant the plea to the jurisdiction, and the factfinder must resolve the fact question. *Id.* (citing *Miranda*, 133 S.W.3d at 227–28). But if the relevant evidence is undisputed or fails to create a fact question on the jurisdictional issue, then the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* (citing *Miranda*, 133 S.W.3d at 228). Whether a court has subject matter jurisdiction is a question of law. *Miranda*, 133 S.W.3d at 226. On appeal, therefore, we review the trial court's ruling on a plea to the jurisdiction de novo. *Johnson*, 572 S.W.3d at 664.

**TxDOT's Plea to the Jurisdiction**

TxDOT's plea challenged the trial court's jurisdiction on two bases. First, TxDOT argued that appellees failed to comply with the notice requirement of the Texas Tort Claims Act (TTCA). *See* TEX. CIV. PRAC. & REM. CODE ANN.

–4–

§ 101.101(a). Second, TxDOT contended that the TTCA did not waive immunity for the claims pleaded by appellees. Appellees pleaded claims against TxDOT that were based on a condition of real property, i.e., a premises liability claim. The TTCA waives sovereign immunity for claims of premises liability only for "personal injury and death so caused by a condition [of] . . . real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* § 101.021(2).

*Appellee Mirza's Claim*

TxDOT's first issue challenges whether governmental immunity bars Mirza's claim for property damages. Mirza was not in the vehicle or at the scene at the time of the accident; his claim is based on his ownership of the vehicle that Toledo was driving. The parties contest the degree of damage Mirza's vehicle suffered, but not the nature of his damages. Mirza's pleading made the following claim:

> As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff, Khaloud Mirza was caused to incur the following damages:
>
> A. Property damages; and
>
> B. Loss of use.

Thus, Mirza claims only damage to his personal property caused by a condition of the premises controlled by TxDOT. But the TTCA does not waive immunity for such a claim. *See* CIV. PRAC. & REM. § 101.021(2) (limiting waiver involving condition of real property to personal injury or death); *see also Tex. Parks*

*& Wildlife Dep't v. E.E. Lowrey Realty, Ltd.*, 235 S.W.3d 692, 694 (Tex. 2007) (when injury is caused by property condition, State's liability is limited; claimant can recover damages arising only from personal injury or death) (citing § 101.021(2)). Because TxDOT's immunity was not waived, the trial court lacked jurisdiction over Mirza's claim, and the trial court erred when it denied the Plea as to him.[5]

We sustain TxDOT's first issue. We reverse the trial court's Order as to Mirza's claim, and we render judgment dismissing that claim for lack of subject matter jurisdiction.

*Appellee Toledo's Claim*

Toledo's pleading sought the following damages for her premises liability claim:

> As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff, Blanca Toledo was caused to suffer bodily injuries, and to incur the following damages:
>
> > A. Reasonable medical care and expenses in the past $5,101.00. These expenses were incurred by Plaintiff, Blanca Toledo for the necessary care and treatment of the injuries resulting from the accident complained of herein and such charges are reasonable

---

[5] We reject Mirza's arguments that his claim should survive the plea because other claims in the suit may survive the plea. "A trial court is not required to deny an otherwise meritorious plea to the jurisdiction or a motion for summary judgment based on a jurisdictional challenge concerning some claims because the trial court has jurisdiction over other claims." *Thomas v. Long*, 207 S.W.3d 334, 338–39 (Tex. 2006). We also reject his request for an opportunity to replead; his claim for property damage cannot be restated in any fashion that would bring it within the TTCA's waiver of immunity for premises liability.

and were usual and customary charges for such services in Dallas County, Texas;

B. Physical pain and suffering in the past; and

C. Mental anguish in the past.

On its face then—unlike Mirza's claim—Toledo's claim appears to fit within the TTCA's waiver of immunity for personal injury caused by a condition on real property. *See* CIV. PRAC. & REM. § 101.021(2). But TxDOT contends that its immunity was not waived for Toledo's claim because she failed to give the required statutory notice of the claim and because Toledo did not raise a genuine issue of material fact as to TxDOT's liability for her injury. We address these arguments in turn.[6]

(1)    Notice of Toledo's Claim

In its third issue, TxDOT argues that Toledo failed to provide the required statutory notice of her claim. The TTCA provides:

> A governmental unit is entitled to receive notice of a claim against it under this chapter not later than six months after the day that the incident giving rise to the claim occurred. The notice must reasonably describe:
>
> (1) the damage or injury claimed;
>
> (2) the time and place of the incident; and
>
> (3) the incident.

---

[6] TxDOT casts these issues as grounds to reverse the trial court's Order as to both appellees. Because we have already determined the Order must be reversed and rendered as to Mirza, we address only Toledo's claim within our discussion.

CIV. PRAC. & REM. § 101.101(a). However, the notice requirements do not apply in a personal injury case if the governmental unit has actual notice that the claimant has received some injury. *Id.* § 101.101(c). The purpose of the TTCA's notice provisions is to "enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial." *Worsdale v. City of Killeen*, 578 S.W.3d 57, 63 (Tex. 2019) (quoting *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995)). TxDOT contends that Toledo did not provide adequate formal notice under section 101.101(a) or actual notice under section 101.101(c).

In her response to TxDOT's plea, Toledo relied upon the Crash Report and upon the correspondence between TxDOT and her attorney to show that TxDOT had actual knowledge of her claim. The Crash Report's narrative description of the accident contained the statement that on the evening of the accident:

> Texas Department of Transportation [was] notified. A traffic control foreman with M.O.T., who is sub-contracted with TxDOT, came on scene and confirmed it needed to have been blocked but was not.

The Crash Report was subsequently filed with TxDOT. It was detailed in its description of location and conditions. It stated that: the entrance to the construction site was not blocked off by barrels or cones; the absence of barrels or cones misled Toledo to believe she was entering an exit ramp; the entrance was normally blocked off when workers were not present "to avoid incidents such as this"; and a Traffic Control Foreman for TxDOT's subcontractor came to the site and "confirmed it needed to have been blocked but it was not." The Crash Report also states that

Toledo was not injured. TxDOT correctly points out that we cannot know precisely what it learned when it was "notified" that night by the Sheriff's office.

The correspondence attached to Toledo's response, however, is more helpful. It includes three letters:

- On September 18, 2018 Toledo's counsel sent a letter to TxDOT stating:

    This is to advise you that our office has been retained to represent the above-referenced client [Ms. Toledo] regarding injuries sustained in an accident that occurred on or about August 14, 2018.

- On September 25, the following response was sent to Toledo's counsel's firm:

    This will acknowledge receipt of your letter, dated September 18, 2018, concerning the above identified claim. Please be advised we are looking into the accident, which is the basis for your client's claim. We will be in further contact with you when our investigation is complete.[7]

- On October 18, TxDOT sent the following letter to Toledo's counsel's firm:

    Please refer to our letter, dated September 25, 2018, concerning the above-identified claim.

    Our investigation of the accident, which [is] made the basis for your client's claim, has been completed and reviewed by the Attorney General's Office. It is their judgment that the Texas Department of Transportation committed no act of negligence which was a proximate cause for this accident.

---

[7] The letter referenced a TxDOT File Number; Toledo's name as the firm's client, the date of the accident, and the location of the accident "SL 12, Dallas County," i.e., State Loop 12.

The September 18 representation letter was signed by Toledo's counsel of record, Sam Almasri. However, this September 25 letter is personally addressed to Yolanda Rodriguez. The substitution suggests some interim contact or correspondence between the firm and TxDOT concerning—at a minimum—whom TxDOT should communicate with at the firm about Toledo's claim.

We, therefore, must deny any responsibility or liability.[8]

Toledo argued in her response to the Plea that this correspondence contains TxDOT's admissions that it had knowledge of the accident and of Toledo's claim. She stressed the fact that, by October 18, TxDOT had completed a full investigation of the claim and the results had been reviewed by the Attorney General.

TxDOT contends that it did not have actual notice as TTCA requires because it did not have actual awareness of its fault in the accident. We agree with TxDOT that mere knowledge that an injury has occurred, standing alone, is insufficient to put a governmental entity on actual notice of a claim. *See City of San Antonio v. Tenorio*, 543 S.W.3d 772, 776 (Tex. 2018). Instead, "there must be subjective awareness connecting alleged governmental conduct to causation of an alleged injury to person or property in the manner ultimately asserted." *Worsdale*, 578 S.W.3d 57 at 65. According to the supreme court, the legislature's language in section 101.101(c), "necessarily encompass[es] the concept of warning of alleged fault, conferred either by notice from the claimant or through the government's own actual awareness of the facts." *Id.* at 71–72. "The critical inquiry is the governmental unit's actual anticipation of an alleged claim rather than subjective confirmation of its actual liability." *Id.* at 68.

---

[8] This letter contained all the same references as the September 25 letter and was also personally addressed to Ms. Rodriguez.

–10–

In this case, TxDOT received the Crash Report describing how and why the accident occurred, engaged in correspondence with Toledo's lawyer concerning her claim against the Department, and conducted an investigation based on that claim, after which it concluded that it "must deny any responsibility or liability." This evidence established that TxDOT had clearly received a warning of its alleged fault. *Id.* at 71; *see also Reyes v. Jefferson Cnty.*, 601 S.W.3d 795, 798 (Tex. 2020) (claimant's communications with county's third-party administrator—coupled with its acknowledgment, investigation, and denial of his claim—established subjective awareness of alleged fault required of actual notice).

While other issues in this case may remain for the finder of fact, we conclude as a matter of law that TxDOT had actual notice of Toledo's claim well within section 101.101's six-month notice deadline. TxDOT knew of allegations that a dangerous condition on a Texas road was alleged to be a factor in Toledo's personal injuries. Whether TxDOT believed it was liable or not is not the standard. *See Worsdale*, 578 S.W.3d at 66–67. We overrule TxDOT's third issue.

(2)     Waiver of Immunity for Toledo's Claim

In its second issue, TxDOT argues that its immunity for Toledo's claim was not waived by the TTCA because there is no evidence that TxDOT had actual or constructive knowledge of the alleged defective condition. The TTCA's statutory scheme waives and abolishes sovereign immunity from suit only to the extent of liability created under the statute. CIV. PRAC. & REM. § 101.025(a). In the trial court,

the summary judgment standard of proof governed determination of "the extent of liability" Toledo had alleged. Therefore, after TxDOT contended that the trial court lacked subject matter jurisdiction, Toledo was required to evidence a disputed issue of material fact regarding whether liability could exist under the TTCA for her claim. *See Miranda*, 133 S.W.3d at 228. We review this issue de novo, viewing the evidence in a light favorable to Toledo, and indulging reasonable inferences from that evidence in her favor. *See Fraley v. Tex. A&M Univ. Sys.*, 664 S.W.3d 91, 97 (Tex. 2023).

A state agency is liable for injury caused by "a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." CIV. PRAC. & REM. § 101.021(2). In ordinary instances, the agency owes a premises liability claimant only the same duty that a private person owes to a licensee on private property. *Id.* § 101.022(a). That is "the duty to warn the licensee of a dangerous condition or to make the condition reasonably safe, but only when the owner is aware of the dangerous condition and the licensee is not." *Fraley*, 664 S.W.3d at 98. However, if the plaintiff alleges that the condition is a "special defect," then the government's duty is expanded, and it owes the duty a private landowner owes to an invitee on its property. *Id.* In that case, the agency's duty becomes "to warn of an unreasonable risk of harm that the premises condition creates when the government owner knows or reasonably should know of that condition." *Id.* Rather than defining "special defect," the TTCA lists

–12–

examples "such as excavations or obstructions on highways, roads, or streets." Civ. Prac. & Rem. § 101.022(b). And the supreme court "has held that a special defect must be 'of the same kind or class' as excavations or obstructions." *Fraley*, 664 S.W.3d at 98 (quoting *County of Harris v. Eaton*, 573 S.W.2d 177, 179 (Tex. 1978)). Among the factors we are to consider in determining whether a condition is a special defect are the size of the defective condition, whether the condition unexpectedly impairs a vehicle's ability to travel on the road, and whether it presents an unexpected and unusual danger to ordinary users of the roadway. *Id.* Whether a condition is a special defect is a question of law. *The Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010).

Toledo's petition alleges that she exited at the ramp onto Northwest Highway, but the ramp—which had been re-purposed as a construction site—was not properly blocked off, causing her to "collide[] onto un-leveled pavement inside a construction zone." Her specific allegations include the following:

> At the time of the accident, the exit ramp to Northwest was not properly blocked off by barricades (i.e. barrels or cones) as the exit ramp was under construction. Defendant, Texas Department of Transportation, breached its duty of care by not maintaining barricades (i.e. barrels or cones) at the entrance of the exit ramp;

> Defendant, Texas Department of Transportation, failed to warn Plaintiff of the exit ramp to Northwest Highway being blocked off due to construction;

> Due to Defendant's failure to warn, Plaintiff encountered a special defect that caused her vehicle to collide onto un-leveled pavement.

–13–

> Defendant, Texas Department of Transportation, had actual knowledge
> that the exit ramp onto Northwest Highway was under construction.

Toledo's allegations were supported by the Crash Report's findings: the previous exit ramp to Northwest Highway had become an entrance to a construction zone; the entrance could be misleading to drivers if it were not blocked off with barrels or cones; the ramp is normally blocked off that way "to avoid incidents such as this"; and TxDOT's contracted traffic control foreman confirmed that the ramp "needed to have been blocked off, but it was not."

TxDOT argues that neither unlevel pavement nor the absence of barriers can be a special defect. But the condition of this real property was not divisible into two simple factors; it was the sum of all the factors Toledo encountered while driving on the ramp that night. The supreme court's "special-defect jurisprudence turns on the objective expectations of an 'ordinary user' who follows the 'normal course of travel.'" *Hayes*, 327 S.W.3d at 116. Similarly, we have said that a condition is a special defect if it presents an unexpected and unusual danger to ordinary users of a roadway. *Mitchell v. City of Dallas*, 855 S.W.2d 741, 748 (Tex. App.—Dallas 1993), *aff'd*, 870 S.W.2d 21 (Tex. 1994).

The pleadings and evidence before us establish that Toledo was an ordinary user of the roadway when a completely unexpected and unusual danger—an unmarked construction zone on a highway exit ramp—impaired her vehicle's ability to travel on the road. *See Fraley*, 664 S.W.3d at 98. Although the evidence does not specify the difference in levels of pavement that she encountered, we know it was

sufficient to cause the vehicle to come to a stop on "a hilltop gravel, inside the construction zone," to damage its undercarriage, and to require that it be towed from the scene. We conclude this is precisely the kind of condition the supreme court envisioned when likening a special defect to "excavations or obstructions on highways, roads or streets." *See* CIV. PRAC. & REM. § 101.22(b); *see, e.g., Hayes*, 327 S.W.3d at 116 (referencing court's earlier conclusion that hole in road was special defect when it was like "a ditch across the highway" and no signs or barriers warned of it) (citing *Eaton,* 573 S.W.2d at 178–80). We conclude that Toledo encountered a special defect when she exited on a highway ramp and—without warning or blockade—found herself in a construction zone, striking pavement uneven enough to cause significant damage to the vehicle she drove and, she alleges, causing her personal injury.

TxDOT contends that even if Toledo establishes that the condition of the ramp constituted a special defect, she has presented no evidence that it had the required constructive knowledge of the dangerous condition.[9] "By statute, the Texas Department of Transportation has 'exclusive and direct control of all improvement

---

[9] Cases that reference "constructive knowledge" in the context of premises liability generally address defects that develop over time. *See, e.g., City of Corsicana v. Stewart*, 249 S.W.3d 412, 415–16 (Tex. 2008) ("Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time."). The re-purposed exit ramp was apparently a planned aspect of a TxDOT-administered project, not a degenerative condition of the land itself. Accordingly, we employ the language used by the supreme court in its statement of the general rule of the duty owed in the case of a special defect, i.e., "to warn of an unreasonable risk of harm that the premises condition creates when the government owner **knows or reasonably should know** of that condition." *See Fraley*, 664 S.W.3d at 98 (emphasis added).

of the state highway system.'" *State v. NICO-WF1, L.L.C.*, 384 S.W.3d 818, 822 (Tex. 2012) (quoting TEX. TRANSP. CODE ANN. § 224.031(a)). Certainly, TxDOT has the ability to contract with both local governments and commercial contractors to assist in that obligation, but TxDOT did not present evidence with its Plea that established as a matter of law that it had no responsibility or control for the safety of drivers encountering the construction site. TxDOT's evidence includes excerpts from the "Development Agreement SH 183 Managed Lanes Project," which TxDOT signed with General Contractor SouthGate Mobility Partners, LLC. However, those excerpts are insufficient, without more, to evidence TxDOT's allegation that a different party (i.e., SouthGate Constructors, a Joint Venture Contractor) was responsible for all maintenance of the re-purposed exit from a different highway (i.e., Loop 12).

TxDOT acknowledged in an interrogatory answer that "this was a TxDOT administered project." To the extent it retained any control over the project, it should have known that the re-purposing of a highway exit ramp as a construction zone would always require a warning to ordinary drivers exiting on that ramp. Toledo again relies on the Crash Report, wherein a traffic control official, identified as a representative of a "sub-contract[or] with TxDOT," confirmed the peace officer's opinion that the construction zone needed to be blocked, but it was not. We conclude that Toledo has raised a genuine issue of material fact concerning whether TxDOT

knew or should have known of the dangerous condition on the ramp and, therefore, had a duty to warn drivers of its existence. We overrule TxDOT's second issue.

## Conclusion

We reverse the trial court's Order denying TxDOT's Plea as to appellee Mirza's claim for property damage; we dismiss Mirza's claim for lack of jurisdiction. In all other respects, we affirm the Order. We remand this case for further proceedings consistent with this opinion.

/Bill Pedersen, III//

220498f.p05

BILL PEDERSEN, III
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

TEXAS DEPARTMENT OF
TRANSPORTATION, Appellant

No. 05-22-00498-CV          V.

BLANCA TOLEDO AND
KHALOUD MIRZA, Appellees

On Appeal from the County Court at
Law No. 2, Dallas County, Texas
Trial Court Cause No. CC-19-01769-
B.
Opinion delivered by Justice
Pedersen, III. Justices Goldstein and
Smith participating.

In accordance with this Court's opinion of this date, the trial court's April 15, 2022 Order Denying Defendant Texas Department of Transportation's Plea to the Jurisdiction and No-Evidence Motion for Summary Judgment (the Order) of the trial court is **AFFIRMED** in part and **REVERSED** in part.

We **REVERSE** that portion of the trial court's Order that denies Texas Department of Transportation's Plea to the Jurisdiction and No-Evidence Motion for Summary judgment as to appellee Khaloud Mirza. We **DISMISS** Mirza's claim for lack of subject matter jurisdiction.

In all other respects, the trial court's Order is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 5th day of June, 2023.